**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | |
|---|---|
| BETTY J. MORTON,          ) | |
|                          ) | |
|           Plaintiff,    ) | Civil Action No. 3:03-3439-CMC-BM |
|                          ) | |
| v.                         ) | |
|                          ) | |
| HULL/STOREY DEVELOPMENT ) | **REPORT AND RECOMMENDATION** |
| L.L.C,                    ) | |
|                          ) | |
|          Defendant.   ) | |

This action has been filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et. seq.</u>, asserting claims for sex discrimination and unlawful retaliation in violation of that Act. Plaintiff also asserts several state law causes of action. Plaintiff is a former employee of the Defendant.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on December 29, 2004.  Plaintiff filed a memorandum in opposition on January 31, 2005, and the Defendant filed a reply memorandum on February 15, 2005.  Defendant's motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.  The Defendant has filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



## **Background and Evidence**[2]

The Defendant is a real estate management company headquartered in Augusta, Georgia. Plaintiff was employed by the Defendant as Director of Specialty Leasing. Specialty leasing involves leasing of essentially short term, non-traditional space in shopping malls. Examples of this type of leasing are carts or kiosks in common areas, holiday and back to school events, and antique shows or carnivals in the common areas or parking lots of shopping malls. Plaintiff's Exhibit A (Plaintiff's Affidavit), at ¶¶ 2-3; Defendant's Exhibit C (Nixon Deposition), p. 92. When Plaintiff was hired for this position, the Defendant had no formal program for specialty leasing, and the Defendant's then Director of Management and Leasing, Dan Nixon, was attempting to develop that program. Prior to being hired by the Defendant, Plaintiff was employed by Preit-Ruben, a competitor of the Defendant, as Regional Speciality Leasing Manager. Defendant's Exhibit D (Plaintiff's Deposition), pp. 22, 28-29. Plaintiff began her employment with the Defendant on September 18, 2000. See Defendant's Exhibit E (Employment Letter).

The record reflects that Plaintiff received a favorable evaluation in December 2000, and received a bonus of seven thousand ($7,000) dollars. Defendant's Exhibit C, pp. 139-140; Defendant's Exhibit D, p. 107; Plaintiff's Exhibit C. Plaintiff also received a high rating on her 2001 performance evaluation, as well as a raise in her base salary and a bonus. Defendant's Exhibit F; Plaintiff's Exhibit D. By September 2002, when Plaintiff was terminated, the Defendant's speciality leasing income had increased to almost one million dollars per year, rising from less than

---

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

2



fifty thousand dollars per year in 1999 (the year before Plaintiff was hired). <u>Plaintiff's Exhibit J</u>.

On September 20, 2002, Plaintiff met with Nixon and James M. Hull, one of the Defendant's member-managers[3], to discuss and review the speciality leasing program and Plaintiff's performance. At that time, the income from the specialty leasing program was up approximately 25% year to date for 2002. <u>Plaintiff's Exhibit N</u>. Nevertheless, at the conclusion of this meeting, Hull made the decision to terminate Plaintiff's employment, telling Plaintiff that she "did not mesh" with the Company. <u>Plaintiff's Exhibit A</u>, ¶ 32. Hull agreed to continue to pay Plaintiff her full salary through December 31, 2002. <u>Plaintiff's Exhibit T</u>. Defendant contends that this agreement was in exchange for Plaintiff's execution of a termination/severance agreement; however, Plaintiff contends that she never agreed to sign any such agreement in exchange for continuation of her salary. <u>See</u> <u>Defendant's Exhibit G (Hull Affidavit)</u>; <u>Defendant's Exhibits H & I</u>; *cf.* <u>Plaintiff's Exhibit A</u>, ¶ 32. Plaintiff also retained legal counsel, who faxed and mailed a letter of representation to Hull on October 1, 2002, stating therein that Plaintiff believed she had been unlawfully terminated in violation of Title VII. <u>Plaintiff's Exhibit V</u>. The Defendant thereafter discontinued Plaintiff's salary effective October 3, 2002. <u>Plaintiff's Exhibit W</u>; <u>Defendant's Exhibit K</u>.

Plaintiff pursued her claims administratively with the Equal Employment Opportunity Commission (EEOC), and after receiving a right to sue letter filed this action in United States District Court. Plaintiff asserts claims for sex discrimination and unlawful retaliation in violation of Title VII, as well as state law causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of contract accompanied by a fraudulent act, violation of the South Carolina Payment of Wages Act, and Promissory Estoppel.

---

[3]The other member-manager is Barry Storey. <u>See</u> <u>Defendant's Exhibit D</u>, pp. 94-97.



## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### (Claim for Sex Discrimination)

Plaintiff's termination claim is for disparate treatment, based on her allegation that she was discriminated against and discharged because of her gender (female) in violation of Title VII. Disparate treatment cases require proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Plaintiff has not offered any direct evidence of gender discrimination.[4] However, the absence of direct evidence of discrimination is not fatal to Plaintiff's claim, as direct proof of discrimination rarely exists in this type of case. In such a situation, indirect evidence of discrimination may be presented

---

[4]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).



through the <u>McDonnell Douglas</u> framework.[5]

  The United States Supreme Court articulated a three-part analysis for evaluating discrimination cases in <u>McDonnell Douglas</u>.  <u>First</u>, Plaintiff must establish a prima facie case of discrimination. In order to establish her prima facie case, Plaintiff must establish the following: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that at the time of the adverse employment action, she was performing at a level that met her employer's legitimate expectations; and (4) that she was replaced in her job by someone from outside of the protected class, or that the adverse employment action otherwise occurred under circumstances giving rise to an inference of unlawful discrimination.  <u>See</u> <u>Settle v. Baltimore County</u>, 34 F.Supp.2d 969, 991 (D.Md. 1999), <u>aff'd sub nom.</u>, <u>Harris v. Earp</u>, 203 F.3d 822 (table) (4th Cir. 2000); <u>see generally</u>, <u>Causey v. Balog</u>, 162 F.3d 795, 802 (4th Cir. 1998); <u>Brinkley v. Harbour Rec. Club</u>, 180 F.3d 598, 607 (4th Cir. 1999); <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993).[6]

  Once a prima facie case has been established, a rebuttable presumption is created

---

[5]Consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. <u>Hill v. Lockheed Martin Logistics Mgt., Inc.</u>, 354 F.3d 277, 284-285 (4th Cir. 2004); <u>see also</u> <u>Mereish v. Walker</u>, 359 F.3d 330, 339-340 (4th Cir. 2004); <u>Machinchick v. PB Power, Inc.</u>, 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases.

Defendant has discussed both the <u>McDonnell Douglas</u> and mixed-motive proof schemes in its brief; however, Plaintiff affirmatively states in her brief that she is only pursing her claim under the traditional <u>McDonnell Douglas</u> proof scheme.  Therefore, the undersigned has only evaluated Plaintiff's claim using a <u>McDonnell Douglas</u> analysis.

[6]The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged.  <u>Ennis v. National Ass'n of Business and Educational Radio, Inc.</u>, 53 F.3d 55, 58(4th Cir. 1995).



that the employer unlawfully discriminated against the Plaintiff. <u>Second</u>, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. <u>Third</u>, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of her employer were really based on Plaintiff's gender. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-805; <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-256; <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. <u>Texas Dep't of Community Affairs</u>, 450 U.S. at 252-253; <u>see also</u> <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 507.

For purposes of summary judgment only, the Defendant has not contested establishment of a prima facie case by the Plaintiff. Defendant argues, however, that it has set forth a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment, and that Plaintiff has failed to present sufficient evidence of pretext to survive summary judgment. Specifically with respect to its termination decision, Defendant has presented evidence that Plaintiff was difficult to manage and had other personnel problems. Hull and Nixon testified that Plaintiff was a "source of conflict" within the office, and that she was disrespectful towards her superiors. <u>Defendant's Exhibit C</u>, pp. 210-211, 216; <u>Defendant's Exhibit A (Hull Deposition)</u>, pp. 203-204. <u>See also</u> <u>Defendant's Exhibit M (Widener Affidavit)</u>; <u>Defendant's Exhibit N (Blackstone Affidavit)</u>; <u>Defendant's Exhibit O (Deborah Mosley Affidavit)</u>. The Defendant has also submitted evidence to the effect that Plaintiff failed to maintain orderly, current files, resulting in difficulties

6



in accounting and billing. Defendant's Exhibit C, p. 226; Defendant's Exhibit A, p. 215; see also Defendant's Exhibit N; Defendant's Exhibit P (Underwood Deposition), pp. 34-37; Defendant's Exhibit Q (Long Affidavit); Defendant's Exhibit R (Catherine A. Mosley Affidavit). Defendant also questions how Plaintiff accounted for or characterized leasing income and the overall performance of her office. Defendant's Exhibit A, pp. 212-213, 225-227; Defendant's Exhibit C, pp. 211, 215, 234; Defendant's Exhibit P (Underwood Deposition), p. 43. This evidence is sufficient for the Defendant to meet its burden of production of showing a legitimate, non-discriminatory reason for its decision to terminate the Plaintiff. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 239 (4th Cir. 1982); EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [ADEA case] [The Defendant's burden is only one of production, not of persuasion].

As noted, where a Defendant rebuts the employee's inference of discrimination by demonstrating a legitimate, non-discriminatory reason for the employment decision, in order to prevail the Plaintiff/employee must demonstrate by a preponderance of the evidence that the employer's proffered reason is a mere pretext for discriminatory conduct. To make this demonstration, Plaintiff must show that "but for" her employer's intent to discriminate against her because of her gender, she would not have suffered the adverse employment action. EEOC, 955 F.2d at 941; Conkwright, 933 F.2d at 234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [gender animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); see Reeves v. Sanderson Plumbing Products,

7



<u>Inc.</u>, 530 U.S. 133, 141-143 (2000).

After careful consideration of the arguments and material presented, the undersigned concludes that the Plaintiff has set forth sufficient evidence to create a genuine issue of fact as to whether she was terminated because of her gender to survive summary judgment. Considered in the light most favorable to the Plaintiff, the evidence before the Court shows that Plaintiff was hired to develop and manage a specialty leasing program with the Defendant, and that during the course of her employment the Defendant's income from this activity increased substantially. Plaintiff also received positive employee evaluations during the course of her employment, and had received no indications regarding deficiencies in her performance prior to her termination in September 2002. <u>Plaintiff's Exhibit A</u>, ¶¶ 32-33; <u>see also</u> <u>Plaintiff's Exhibit G</u>. The evidence further shows that there was only one other female in the Defendant's upper management, Cindy Jowers, who was removed from her position as Director of Operations within a week of Plaintiff's termination, and was then replaced by a male. <u>Plaintiff's Exhibit CC (Jowers Deposition)</u>, pp. 55-56. Prior to Jowers' removal, she was told by Hull that she was "acting just like a woman [and] wasn't showing the ability to make a decisive decision." <u>Plaintiff's Exhibit CC</u>, pp. 53-54. Hull was the same official who made the decision to terminate Plaintiff's employment. Hull also told Jowers that she was acting just like "his wife". <u>Id</u>, p. 54. Jowers interpreted this remark to mean that Hull did not think she could hold the position of authority that she did. <u>Id</u>, p. 55.

Jowers further testified that she heard another principal of the Company[7] say that

_____

[7]Unidentified in the evidence submitted to the Court.



women should not hold positions of authority within the Company; <u>Id</u>, p. 62; and another female employee of the Defendant, Michelle Sapara, also testified regarding the condescending attitude exhibited towards women at the Defendant's workplace. <u>Plaintiff's Exhibit FF (Sapara Deposition)</u>, at pp. 8, 91, 96.[8] Finally, Plaintiff notes that other employees, as well as her direct supervisor, Nixon, have contradicted the Defendant's claim that Plaintiff was difficult to manage or work with in their deposition testimony. <u>See</u> <u>Plaintiff's Exhibit DD (Nixon Deposition)</u>, pp. 211-212, 216. <u>See also</u> <u>Plaintiff's Exhibit CC</u>, pp. 46, 70-71, 77-78; <u>Plaintiff's Exhibit AA (Gibson Deposition)</u>, p. 112; <u>Plaintiff's Exhibit GG (Underwood Deposition)</u>, p. 34.

In sum, while the Defendant has submitted evidence to show a justification for its decision to terminate Plaintiff's employment and to contest Plaintiff's discrimination claim, the undersigned does not find that, considered in the light most favorable to the Plaintiff, "[n]o reasonable trier of fact could conclude that [gender] was more likely than not a motivating factor" in the Defendant's employment decision based on the evidence submitted. <u>Spratley v. Hampton City Fire Dept.</u>, 933 F.Supp. 535, 542 (E.D.Va. 1996), <u>aff'd</u>, 125 F.3d 848 (4th Cir. 1997); <u>see</u> <u>Conkwright</u>, 933 F.2d at 234 ["[I]ndirect evidence of discriminatory motive may do [as long as it is] sufficient for a reasonable factfinder to infer that the employer's decision…was motivated by [sex animus]"]; <u>see</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S.Ct. 2097, 2105-2109 (2000) [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to raise an inference that the employer's asserted justification for

---

[8]Sapara also testified that another female employee, Cathy Ward, had been terminated by Hull after allegedly being told by Hull that she had "mental problems and was acting just like a woman." <u>Plaintiff's Exhibit FF</u>, p. 48. Defendant objects to this Court's consideration of this testimony on the grounds of hearsay.



the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated]. Therefore, Defendant's motion for summary judgment with respect to Plaintiff's sex discrimination claim should be denied.

## II.

### (Retaliation Claim)

Plaintiff also claims that she was unlawfully retaliated against when the Defendant unilaterally canceled her salary payments through the end of 2002 after learning that Plaintiff was exploring the possibility of filing a charge of discrimination. Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). "The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection



10

existed between the protected activity and the adverse action." Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must demonstrate that the Defendant's proffered reason is pretextural. Id.

Plaintiff engaged in protected activity when she advised the Defendant, through counsel, that she was exploring the possibility of filing a charge of discrimination arising out of her termination. Plaintiff's Exhibit V; see Paquin v. Federal Nat'l Mortgage Association, 119 F.3d 23, 31-32 (D.C.C. 1997). However, Defendant argues that its discontinuance of Plaintiff's severance payments does not constitute an adverse employment action for purposes of a Title VII retaliation claim, nor has a causal connection been established between the Defendant's actions and any protected activity by the Plaintiff. After careful consideration of the arguments and evidence presented, the undersigned is constrained to agree that, even if the discontinuance of Plaintiff's severance payments can be deemed an adverse employment action, Plaintiff has failed to establish the requisite causal connection to allow her retaliation claim to proceed.

The Defendant has presented evidence to show that it does not have any standard severance policy entitling employees to continuation of salary and/or benefits following their termination; see Defendant's Exhibit A, at pp. 310-312; and Plaintiff has presented no information or evidence to dispute this assertion. Hence, while the Defendant does not contest that, at the time of her termination, the Defendant offered to continue paying Plaintiff her salary through December 31, 2002, it was under no obligation to do so. See Plaintiff's Exhibits T&U. Nevertheless, although



11

far from settled law, there is support for the proposition that an employer's withdrawal of even a voluntary benefit, as was the case here, may constitute an adverse employment action for purposes of a retaliation claim. *Cf.* Paquin, 119 F.3d at 32; Rabe v. City of Bemidji, 2004 WL 741758, at *5-6 (D.Minn. March 17, 2004). Even assuming that the Defendant's refusal to continue Plaintiff's severance payments constitutes an adverse employment action, however, Plaintiff must still show a causal connection between the Defendant's conduct and her having engaged in protected activity, and Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether the Defendant's refusal to continue her severance payments was because Plaintiff engaged in protected activity.

It is undisputed that Plaintiff met with Hull and Nixon on September 20, 2002, at which time Hull agreed to continue to pay Plaintiff her full salary through December 31, 2002 subject to certain conditions. Plaintiff's Exhibit T. While Plaintiff contends that Hull's offer did not require her to sign any termination/severance agreement in order to receive these payments, and the Defendant contends that this was a requirement, it is undisputed in the evidence before this Court that a termination/severance agreement was prepared and mailed to the Plaintiff for her signature. The cover letter from Hull to the Plaintiff enclosing the agreement is dated September 30, 2002, and the postmark on the envelope is October 1, 2002. Plaintiff's Exhibit U. It is further undisputed that Plaintiff refused to sign this agreement.

Defendant's refusal to continue Plaintiff's severance payments after Plaintiff failed to sign this agreement could constitute unlawful retaliation only if the *reason* the Defendant required Plaintiff to execute this agreement, and its subsequent canceling of her payments when she refused to do so, was because of Plaintiff's threat to pursue a discrimination claim. *Cf.* Paquin, 119 F.3d at



32 [Plaintiff failed to establish causal connection between her protected activity and the Defendant's withdrawal of an offer of a severance package where Plaintiff did not engage in the purported protected activity before offer expired]. This is what Plaintiff would have the Court believe. Specifically, Plaintiff argues in her brief that there was originally no requirement for her to sign a termination agreement, and that this proposed agreement was only prepared and sent to her *after* the Defendant received counsel's letter of representation and notifying the Defendant that Plaintiff intended to pursue a discrimination claim. However, the only support Plaintiff offers for this argument is that the envelope containing the agreement bears a postmark of October 1, 2002, which is the same date that her counsel mailed and faxed a letter of representation to Hull. Plaintiff argues in her brief that "[a] reasonable inference is that Mr. Hull sent the proposed release to [Plaintiff] only after receiving [counsel's] letter of representation." Plaintiff's Brief , at p. 8. See Rabe v. City of Bemidji, 2004 WL 741758, at *5-6 [employer's withdrawal of a voluntary benefit causally related to plaintiff's protected activity of stating that he opposed his termination on protected grounds constitutes unlawful retaliation].

However, since counsel mailed his letter to Hull on October 1, the Defendant would not have received the mailed letter until sometime after that date. As for the faxed copy of the letter, while Plaintiff's Exhibit V does reflect that this letter was faxed to the Defendant's office on October 1, the transmission report which is a part of Plaintiff's Exhibit V clearly indicates that this fax was not sent until 5:15 p.m. This evidence undercuts Plaintiff's argument that a "reasonable inference" can be drawn that the Defendant did not prepare and mail the termination agreement to the Plaintiff until after Hull had received and reviewed Plaintiff's counsel's letter. In order to accept this argument, the Court would have to find that the evidence presented is sufficient to create a



13

genuine issue of fact as to whether Hull received and reviewed Plaintiff's counsel's faxed letter sometime after 5:15 p.m. on October 1, 2002, and that he was then able to prepare a termination/release agreement, have his secretary type a cover letter (which was backdated to the previous day), and get this material in the mail in time for it to receive a postmark for that same date. Plaintiff has pointed to no evidence, such as affidavits or deposition testimony, to support this argument, and Plaintiff's mere speculation that such a sequence of events could have possibly occurred, without any other supporting evidence, is not sufficient to create a genuine issue of fact as to whether such events actually occurred. See Contemporary Mission v. United States Postal Serv., 648 F.2d 97, 107, n.14 (2d Cir. 1981) [An "opposing party's facts must be material and of a substantial nature, not fanciful,...conjectural, speculative, nor merely suspicions"] (internal citations and quotation marks omitted); Kulak v. City of New York, 88 F.3d 63, 71 (2nd Cir. 1996) ["conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"]; Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir. 2000) [Conjectural allegations and conclusory assertions do not suffice to establish a genuine issue of fact].

        Obviously, Plaintiff was under no obligation to sign the Defendant's proposed agreement or any release of her claims. However, after she failed to sign and return this document, the Defendant was under no obligation to continue monetary payments to her in light of her refusal to do so, and as the evidence submitted is not sufficient to raise a reasonable inference that the Defendant only sent Plaintiff this severance agreement after it had received notice of her intent to pursue a discrimination claim,[9] Defendant's discontinuance of Plaintiff's severance payments

_____

        [9]If the payments at issue were something that Plaintiff had been entitled to irrespective of signing a release, then the Defendant's failure to provide these payments after receipt of Plaintiff's counsel's letter could provide a causal link between the two events. *Cf.* Carney v. The American



following Plaintiff's refusal to sign this agreement does not establish a causal connection between the purported adverse employment action and her having engaged in protected conduct. *Cf.* <u>Paquin</u>, 119 F.3d at 32 [no causal connection where adverse action (withdrawal of severance package) was not caused by protected activity]; <u>Montague v. The Oakwood Club, Inc.</u>, 2003 WL 549927, at \*4 (Ohio Ct.App. 2003) [failure of employer to pay severance pay or benefits to an employee who refuses to sign a severance agreement does not constitute an adverse employment action as a matter of law]; <u>see</u> <u>Jackson v. Lyons Falls Pulp & Paper, Inc.</u>, 865 F.Supp. 87, 95 (N.D.N.Y. 1994) [employer's refusal to provide benefits and severance pay to former employee after employee refused to sign separation agreement was not unlawful retaliation under the ADEA]; <u>Cronin v. ITT Corp.</u>, 737 F.Supp. 224, 231 (S.D.N.Y. 1990) [no retaliation where former employee refused to sign release]; *cf.* <u>Stiltner v. Beretta U.S.A. Corp.</u>, 74 F.3d 1473, 1484 (4th Cir. 1996) [ERISA case].

Therefore, as Plaintiff has failed to show that the Defendant's decision to discontinue her severance payments was due to the Defendant having received notice of Plaintiff's intent to pursue a discrimination claim,  rather than because of Plaintiff's failure to sign a termination agreement previously provided, Plaintiff has failed to show causation and her retaliation cause of action should be dismissed.

### III.

### (Breach of Contract Claim)

Plaintiff asserts in her third cause of action that an August 28, 2000 Letter Agreement

---

<u>University</u>, 151 F.3d 1090, 1095 (D.C.Cir. 1998) [withholding benefits to which an employee is otherwise entitled amounts to just the sort adverse personnel action that can support a retaliation claim]; <u>EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.</u>, 821 F.2d 1085, 1089 (5th Cir. 1987) ["clearly if [the employer] stopped providing [the employee] benefits to which he was otherwise entitled simply because he filed a charge, the company would be guilty of retaliation"].



sent to her from the Defendant rendered her a permanent employee of the Defendant, terminable only for cause or upon her own breach of her duties and responsibilities under the contract. Plaintiff further alleges that she fully performed all of her obligations under her employment contract with the Defendant and complied with all of the material terms and conditions of the contract, and that the Defendant breached its employment contract with the Plaintiff by terminating her without cause in violation of this letter agreement. Defendant asserts that this letter did not constitute a contract, that it had no employment contract with the Plaintiff, and that Plaintiff was an at-will employee.

It is undisputed that South Carolina is an employment at-will state. <u>Angus v. Burroughs & Chapin Co.</u>, 596 S.E.2d 67, 70 (S.C.Ct.App. 2004); <u>Conner v. City of Forest Acres</u>, 560 S.E.2d 606 (S.C. 2002). Like South Carolina, Georgia is also an at-will employee state. <u>Jellico v. Effingham County</u>, 471 S.E.2d 36, 37 (Ga.Ct.App. 1996); <u>see also</u> Ga.Code Ann. § 34-7-1 (2004).[10] When an employee is an employee at-will, either party has the right to terminate the employee relationship at any time, for any reason or no reason at all, without incurring liability. <u>Horton v. Darby Elec. Co., Inc.</u>, 599 S.E.2d 456, 460 (S.C. 2004); <u>Dodgens v. Kent Manufacturing Co.</u>, 955 F.Supp. 560, 566 (D.S.C. 1997); <u>Ludwig v. This Minute of Carolina, Inc.</u>, 337 S.E.2d 213, 214-215 (S.C. 1985); <u>Gause v. Doe</u>, 451 S.E.2d 408, 409 (S.C.Ct.App. 1994); <u>Toth v. Square D Co.</u>, 377 S.E.2d 584, 587 (S.C. 1989) [Gregory, C.J. dissenting]. This at-will status can be altered by the creation of a "contract" between the employee and employer, or if an employer issues policies that alter the at-will employment status of the relationship. <u>Small</u>

---

[10]Defendant argues that Georgia law should be applied to Plaintiff's state law claims, while Plaintiff argues that South Carolina law should be applied. However, for purposes of consideration of the Defendant's motion for summary judgment, the decision of which state law to apply is of little import, as the result after consideration of Plaintiff's state law claims is the same. <u>See</u> discussion, <u>infra</u>.



v. Springs Industries, Inc., 357 S.E.2d 452, 455 (S.C. 1987). However, to alter the at-will relationship between the parties, the cited provisions or policies must be drafted in sufficiently mandatory terms to give rise to a reasonable expectation on the part of the employee of continued employment. Further, the employee must establish that the employer breached the pertinent provisions or policies at issue. Id.

  The underlying facts regarding Plaintiff's employment with the Defendant are essentially not in dispute. Plaintiff had been employed by Preit-Ruben for approximately eleven (11) years, where she held the position of Regional Specialty Leasing Manager. Defendant's Exhibit D, pp. 22, 28-29. Plaintiff was recruited by Nixon to come work for the Defendant as its Director of Specialty Leasing, who initially offered her a starting salary of $80,000. Defendant's Exhibit D, pp. 89-91. Plaintiff made a counter-offer of $90,000, and after a meeting between the Plaintiff, Nixon, Hull and Storey, Nixon called Plaintiff and offered Plaintiff the job at an annual base salary of $90,000. Defendant's Exhibit D, pp. 95-97. Nixon indicated that he would formalize the offer in writing and fax the letter to Plaintiff. Plaintiff's Exhibit A, ¶¶ 9-10; see Defendant's Exhibit E. This letter, dated August 28, 2000 and which Plaintiff asserts constitutes an employment contract, begins "[i]temized below are the general business terms regarding the commencement of your employment with Hull/Storey Development LLC (the "Company")". The letter then goes on to set forth Plaintiff's start date, her title, her annual base salary, under what circumstances she will receive a bonus, what her participation will be in the Defendant's pension/profit sharing and health insurance plans, what her vacation will be, and other miscellaneous items such as car and travel allowances, and use of a cellular phone. See Defendant's Exhibit E. After reviewing this letter, Plaintiff telephoned Nixon to accept the offer.

17



Whether considered under South Carolina or Georgia law, the letter of August 28, 2000 is not an employment contract so as to void Plaintiff's at-will employee status, as this document does not contain the type of mandatory language required by the applicable caselaw to constitute an employment "contract" between the Plaintiff and her employer. A promise of employment at a particular salary and/or with particular benefits that is for an indefinite period of time is not a contract of employment under either South Carolina or Georgia law. Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *4 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status. Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]; Storms v. Goodyear Tire & Rubber Co., 775 F.Supp. 862, 867 (D.S.C. 1991) [noting that language cited by the employee was "not couched in mandatory terms and [did] not contain language that specifically [limited] the employer's right to demote or terminate [the Plaintiff] without cause"]; Prescott v. Farmers Telephone Co-Op. Inc., 491 S.E.2d 698 (S.C.Ct.App. 1998) ["A contract for permanent employment of indefinite duration, which is unsupported by any other consideration than the respective obligations to perform services and pay wages, is terminable at the will of either party."], rev'd on other grounds, 516 S. E. 2d 923 (S.C. 1999); Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213, 216 (S.C. 1985); Davenport v. Island Ford, Lincoln, Mercury, Inc., 465 S.E.2d 737, 739 (S.C.Ct.App. 1995); see also Balmer v. Elan Corp., 583 S.E.2d 131, 133 (Ga.Ct.App. 2003); Schuck v. Blue Cross & Blue Shield of Georgia, Inc., 534 S.E.2d 533, 535 (Ga.Ct.App. 2000); Georgia Power Co. v. Busbin, 250 S.E.2d 442, 443-444 (Ga. 1978).

18



Plaintiff also argues that this document should be considered a contract because she provided independent consideration to the employment relationship beyond her mere agreement to work, citing to <u>Orsini v. Trojan Steel Corp.</u>, 64 S.E.2d 878, 879 (S.C. 1951) [employment at-will status may be altered where employee has given a good consideration in addition to the services rendered]. Plaintiff argues that giving up her previous position and providing Plaintiff with her eleven (11) years of training and experience in specialty leasing constitutes independent consideration in addition to the services to be rendered by the Plaintiff. However, this is not "independent consideration" sufficient to establish an employment contract. <u>Davenport</u>, 465 S.E.2d at 739 [giving up another at-will position is not additional consideration sufficient to render a contract for permanent employment enforceable]; <u>Orsini</u>, 64 S.E.2d at 880; <u>see also</u> <u>Baxley Veneer and Clete Co. v. Maddox</u>, 404 S.E.2d 554, 555-556 (Ga. 1991)["Giving up another job, moving to a new location and beginning work are acts that are not inconsistent with employment that is terminable at will."](citing <u>Presto v. Scientific Atlantic, Inc.</u>, 388 S.E.2d 719, 721 (Ga.App. 1989)). While an abandonment by the Plaintiff of an existing business, as opposed to leaving an existing job, may under some circumstances be considered independent consideration; <u>Weber v. Perry</u>, 21 S.E.2d 193, 194 (S.C. 1942) ["The abandonment by Plaintiff of his business...in order to accept the employment which was offered him...constituted...an independent consideration...."]; <u>Orsini</u>, 64 S.E.2d at 879; that is not what occurred in this case. [11] Therefore, the Defendant is entitled to

---

[11]Plaintiff also argues in her brief that the Defendant's employee handbook promises employees that they can take up to twelve (12) weeks of leave to care for a seriously ill family member, and that this benefit is written in sufficiently mandatory language to constitute a contract, giving rise to a claim for breach of contract if the Defendant failed to abide by its promises. <u>See</u> <u>Plaintiff's Exhibit I</u>. However, it is unclear what this argument and document have to do with Plaintiff's claim in this case, as Plaintiff has not alleged that the Defendant ever failed to provide her with leave to care for a seriously ill family member, even assuming that the Defendant was



summary judgment on Plaintiff's breach of contract claim.

## IV.

### (Claim for Breach of Implied Covenant of Good Faith and Fair Dealing)

In her fourth cause of action, Plaintiff asserts that there is implied in every contract a covenant of good faith and fair dealing, and that the Defendant breached this covenant by terminating Plaintiff without cause and without notice on or about September 20, 2002. However, in order to maintain this claim, Plaintiff must first have had an employment contract with the Defendant, as the implied covenant of good faith and fair dealing only applies where an employment contract has altered the at-will employment status. Keiger v. Citgo, Coastal Petroleum, Inc., 482 S.E.2d 792, 793 (S.C.Ct.App. 1997); see also Wireless MD, Inc. v. Healthcare.com Corp., 610 S.E.2d 352, 358 (Ga.App. 2005)[Since Defendant had no contractual duty, either express or implied, it follows that Plaintiff cannot show a failure to act in good faith in "the performance of the terms of the agreement."](quoting Camp v. Peetluk, 585 S.E.2d 704 (Ga.App. 2003)).

Therefore, as the Plaintiff has failed to present sufficient evidence to establish the existence of a contract, her cause of action for breach of the covenant of good faith and fair deal is also subject to dismissal. Keiger, 482 S.E.2d at 793; Dodgens v. Kent Manufacturing Co., 955 F.Supp. 560, 567 (D.S.C. 1997) [Cause of action for breach of implied covenant of good faith and fair dealing cannot be recognized absent proof of an underlying contract]; Hindman v. Greenville Hosp. Sys., 947 F.Supp. 215 (D.S.C. 1996) ["Under S.C. law, there is simply no claim for the

---

contractually obligated to do so.



breach of the implied covenant of good faith and fair dealing in the employment context…."]; see also Stuart Enterprises Intern., Inc. v. Peykan, Inc., 555 S.E.2d 881 (Ga.App. 2001)["Although we have not expressly ruled whether the common law requirement of good faith and fair dealing in the performance of a contract creates an independent cause of action apart from breach of contract, the Eleventh Circuit Court of Appeals has examined the question and ruled that Georgia law would not recognize such an independent cause of action.  Alan's of Atlanta, [Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th Cir. 1990). We agree."].

## V.

### (Claim for Breach of Contract Accompanied by a Fraudulent Act)

In her fifth cause of action, Plaintiff asserts a claim for breach of contract accompanied by a fraudulent act.  In order to have a claim for breach of contract accompanied by a fraudulent act, the Plaintiff must establish three elements: 1) a breach of contract; 2) fraudulent intent relating to the breaching of the contract and not merely to its making; and 3) a fraudulent act accompanying the dishonesty in fact or unfair dealing. Conner v. City of Forest Acres, 560 S.E. 2d 606, 612 (S.C. 2002).[12]

Since Plaintiff has failed to show that she had a contract with the Defendant, she has failed to establish one of the necessary elements for this claim, and it should therefore be dismissed.

## VI.

In her sixth cause of action, Plaintiff asserts a claim under the South Carolina Payment of Wages Act, S.C.Code Ann. § 41-10-10, et. seq..  This Act provides that upon an

---

[12]Neither party has cited to any case showing this cause of action being applied in Georgia. Cf. Republic Iron and Steel Co. v. Norris, et al., 104 S.E. 921 (Ga.App. 1920).



employee's separation from employment, "the employer shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular pay day which may not exceed thirty days." S.C.Code Ann. § 41-10-50.

Defendant argues that this claim is subject to summary judgment because Georgia law governs Plaintiff's state law claims, thereby foreclosing any claim under this Act as a matter of law. Defendant further argues that, even if the Court were to deem South Carolina law appropriate in this case, the Defendant would still be entitled to summary judgment. After careful review of the arguments and evidence presented, the undersigned is constrained to agree.

Plaintiff's payment of wages claim is based on the Defendant's failure to pay her "personal leave" through December 31, 2002 following her discharge in September 2002. Plaintiff argues that she is entitled to this money under the Payment of Wages Act pursuant to Hull's e-mail of September 23, 2002, wherein he stated "I am writing to confirm my understanding that you are granted a paid personal leave until December 31, 2002 with your base compensation continuing as before." Plaintiff's Exhibit T. However, the Payment of Wages Act defines wages to include "vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract." S.C.Code Ann. § 41-10-10(2). Defendant has presented evidence to show that it did not have a policy entitling employees to continuation of salary and/or benefits following their termination; see Defendant's Exhibit A, pp. 310-312; and Plaintiff has presented no evidence to show that any such policy existed. Further, the undersigned has already previously found that Plaintiff has failed to present sufficient evidence to create an issue of fact as to whether an employment contract existed between her and the Defendant.

Finally, in addition to there being no policy regarding personal leave payments, and



no evidence that Plaintiff was owed any personal leave by the Defendant according to any policy or contract at the time of her discharge, Plaintiff's argument that this was somehow money she was owed as personal leave is further undermined by Hull's characterization of these payments in his e-mail as being "in the nature of severance pay".  <u>Plaintiff's Exhibit T</u>.  Unlike accrued vacation or holiday and sick leave pay, payments given to an employee as severance pay are not covered under the Wage Payment Act. <u>See</u> S.C.Code Ann. § 41-10-10.[13]  Therefore, Plaintiff's cause of action under the South Carolina Payment of Wages Act is subject to summary judgment, even if South Carolina law applies to this claim instead of Georgia law.

## VII.

### (Claim for Promissory Estoppel)

In her seventh and final cause of action, Plaintiff alleges that Nixon promised her that, if she left her employment with Preit-Ruben and came to work for the Defendant, she would have a permanent position as long as she continued to perform her job duties.  Plaintiff further alleges that she relied on this promise by Nixon in resigning her employment with Preit-Ruben and accepting employment with the Defendant, and that the Defendant breached this promise when it terminated Plaintiff's employment without sufficient cause and without warning, thereby entitling her to damages.

Under Georgia law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

---

[13]In 1990 the South Carolina General Assembly amended this Section to exclude severance pay from the statutory definition of wages. <u>See</u> Act No. 463, 1990 S.C.Acts 2110.



The remedy granted for breach may be limited as justice requires." Georgia Code Ann. § 13-3-44(a). However, if considered under Georgia law, Plaintiff's claim of promissory estoppel is subject to summary judgment because the principal of promissory estoppel "has no application...where the promise relied on was for employment for an indefinite period". <u>Balmer v. Elan Corp.</u>, 599 S.E.2d 158, 162 (Ga. 2004), quoting <u>Barker v. CTC Sales Corp.</u>, 406 S.E.2d 88 (Ga.Ct.App. 1991).

   If Plaintiff's claim is instead considered under South Carolina law, in order to establish her claim Plaintiff must prove the following: "1) presence of a promise unambiguous in its terms; 2) reasonable reliance upon the promise by the party to whom the promise is made; 3) the reliance is expected and foreseeable by the party who makes the promise; and 4) the party to whom the promise is made must sustain injury in reliance on the promise." <u>Woods v. State</u>, 431 S.E.2d 260, 263 (S.C.Ct.App. 1993); <u>Powers Construction Co. v. Salem Carpets, Inc.</u>, 322 S.E.2d 30, 33 (S.C.Ct.App. 1984). According to Plaintiff's brief, her claim for promissory estoppel is based on both the "oral and written promises made by Mr. Nixon concerning her job security at Hull/Storey." <u>Plaintiff's Brief</u>, at p. 37. However, the undersigned has previously found that the written communication to the Plaintiff of August 28, 2000 does not constitute a promise of permanent employment, and therefore does not provide a basis for Plaintiff's promissory estoppel claim. <u>See</u> <u>Sakelaris v. Rice/Maddox Partnership</u>, 883 F.Supp. 64, 66 (D.S.C 1995) ["reliance on a promise consisting solely of at-will employment is unreasonable as a matter of law"], citing <u>White v. Roche Bio-Medical Lab., Inc.</u>, 807 F.Supp. 1212, 1220 (D.S.C. 1992), <u>aff'd</u>, 998 F.2d 1011 (4th Cir. 1993). Any oral assurances by Nixon are also not, standing alone, sufficient to give rise to a claim for promissory estoppel. <u>Sakelaris</u>, 883 F.Supp. at 66; <u>see also</u> <u>Taliaferro v. Associates Corp. of N. Am.</u>, 112 F.Supp.2d 483 (D.S.C. 1999) [oral assurances that employee could only be fired for "stupid



mistakes or breaking company policy" did not give rise to an offer of definite employment]; <u>Prescott v. Farmers Tel. Coop., Inc.</u>, 516 S.E. 923 (S.C. 1999); <u>Davis v. Orangeburg-Calhoun Law Enforcement Commission</u>, 542 S.E.2d 755 (S.C.Ct.App. 2001) [oral assurances of job security do not create an implied contract for permanent or life-time employment]; *cf.* <u>Citizens Bank v. Gregory's Warehouse, Inc.</u>, 375 S.E.2d 316, 318 (S.C.Ct.App. 1988) ["whether promissory estoppel is applicable depends upon whether the refusal to apply the doctrine would be virtually to sanction the perpetration of fraud or would result in other injustice"]. Therefore, Plaintiff's promissory estoppel claim should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment with respect to Plaintiff's first cause of action (gender discrimination) be **denied**. It is further recommended that the Defendant's motion for summary judgment with respect to the remainder of Plaintiff's claims be **granted**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 21, 2005